**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

SUSAN BROOKS and CLAUDIA HUTTO,

   Plaintiffs,         Case Number 12-CV-12880
                    Honorable Denise Page Hood

v.

CHARTER TOWNSHIP OF CLINTON, a
Michigan municipal corporation, and GEORGE
FITZGERALD, an individual, sued in his official
and personal capacity.

   Defendants.
_____/

## ORDER DENYING DEFENDANT, GEORGE FITZGERALD'S MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL [#61], WITHOUT PREJUDICE

### I.  INTRODUCTION

  Plaintiffs filed this suit against Defendants for retaliatory constructive discharge in violation of Plaintiffs' state and federal rights to freedom of speech, for wrongful discharge in violation of public policy, violation of the Michigan Whistleblowers' Protection Act, retaliation in violation of the Michigan Elliott-Larsen Civil Rights Act, defamation, assault, intentional infliction of emotional distress, and retaliation. **[Docket No. 42]** Plaintiffs brought suit against the Charter Township of Clinton, a Michigan Municipal Corporation, and George Fitzgerald, in both his personal and official capacity. Now before the Court Defendant, George Fitzgerald's, Motion to Disqualify Plaintiffs' Counsel. **[Docket No. 61, filed June 12, 2013]** Plaintiffs filed

a response to this Motion on June 28, 2013, **[Docket No. 67]** to which Defendant Fitzgerald filed a reply. **[Docket No. 70, filed July 5, 2013]** For the reasons stated below, Defendant Fitzgerald's motion is **DENIED**, without prejudice.

## II.     BACKGROUND

Plaintiffs Susan Brooks and Claudia Hutto brought this action against their employer, Clinton Township, and their immediate supervisor, George Fitzgerald. Plaintiffs allege that Defendant Fitzgerald subjected them to harassment, abusive language, physical intimidation and threats, and retaliation after they refused to help him perpetrate a sexual harassment scheme. Plaintiffs allege they instead reported the harassment to Clinton Township officials. In addition to these claims, Plaintiff Brooks claims that Defendant Fitzgerald directed her to falsify press reports and keep him apprised of the activities of his political rivals, something that she expressed she did not want to do. Plaintiff Brooks claims that when she refused to engage in these dishonest political acts, Defendant Fitzgerald retaliated against her. Plaintiffs allege that Defendant Fitzgerald's hostility and threatening behavior towards them escalated after they filed sheriffs' reports against him, requested the aid of law officials, complained about his behavior to Township officials, and participated as complainants and witnesses in a township investigation against him. Plaintiffs contend that Defendant Township has since isolated them and removed them from doing any work

related to their previous positions.

## III.  ANALYSIS

A motion to disqualify counsel may be a legitimate tool to protect the integrity of judicial proceedings. Because the ability to deny an opponent the services of capable counsel is a potent weapon, *see Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir.1988), "courts must be vigilant in reviewing disqualification motions." *MJK Family LLC v. Corporate Eagle Mgmt. Servs., Inc.*, 676 F. Supp. 2d 584, 592 (E.D. Mich. 2009). The movant bears the burden of proving that opposing counsel should be disqualified, *see S.D. Warren Co. v. Duff-Norton*, 302 F. Supp. 2d 762, 767 (W.D. Mich.2004), and any decision to disqualify counsel must be based on "a factual inquiry conducted in a manner allowing appellate review." " *MJK Family*, 676 F. Supp. 2d at 592 (citing *General Mill Supply Co. v. SCA Servs.*, 697 F.2d 704, 710 (6th Cir. 1982)). When deciding a motion to disqualify an attorney, this Court must consider whether: (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification. *See Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990).

The existence of a previous attorney-client relationship between Plaintiffs' counsel and the Defendant may be express or implied. *See Dalrymple v. Nat'l Bank & Trust Co. of Traverse City*, 615 F. Supp. 979, 985 (W.D. Mich. 1985). Here, it appears that Defendant Fitzgerald is alleging that he had an implied relationship with Attorney Gordon based on a telephone call with her during which he purports to have shared certain confidences. To determine if an implied relationship has been formed, this Court must look to Defendant Fitzgerald's "subjective belief that he [was] consulting a lawyer in [her] professional capacity, and on his intent to seek professional legal advice." *MJK Family*, 676 F. Supp. 2d at 592 (citing *See Dalrymple*, 615 F. Supp. at 982). Assuming without deciding that Defendant Fitzgerald believed he was seeking professional legal advice when calling Attorney Gordon's officer, this Court must also determine whether Defendant Fitzgerald "*reasonably believes* an attorney-client relationship has been created." *Id.* (emphasis added). Based on the facts before it, this Court cannot determine that Defendant Fitzgerald could *reasonably believe*—either at the time of the call or presently—that an attorney relationship was created.

Defendant Fitzgerald contends that Plaintiff's counsel, Deborah Gordon, should be disqualified because of his "perceived [] conflict of interest arising out of information he disclosed to Plaintiffs' attorney at a time he believed she was providing

4

legal advice to him." **[Docket No. 61, Pg ID 804]** Defendant Fitzgerald states that, on or about May 25, 2011, he was referred by Attorney Steven Fishman to Attorney Gordon, a labor and employment specialist. **[Id. at 802]** Mr. Fitzgerald alleges to have spoken to Attorney Gordon "for approximately twenty minutes" and that, during the conversation he "advised Ms. Gordon that a long time employee (Susan Brooks) filed a complaint with Human Resources in which she alleged he used foul language[,] . . . revealed to Ms. Gordon that Ms. Brooks (his secretary at the time) stated that he was 'going to lose' the next election[,] . . . [and] told Ms. Gordon, in confidence, that he became angry when Ms. Brooks said this to him and he discussed with Ms. Gordon the specific language which he directed towards Ms. Brooks in response." **[Id. at 802, Ex. A at 815-18]**

Defendant Fitzgerald further alleges that during his conversation with Ms. Gordon, he "specifically mentioned by name Susan Brooks and Claudia Hutto . . . and Kimberly Irvine" and that Ms. Gordon "provided legal advice," telling him to begin to "document everything," and instructing him to "send certified letters to employees in the Clerk's and Supervisor's office seeking their explanation of the events in question as well as the Supervisor's attempts to intervene in the operation of the Clerk's Office." **[Id. at 802]** Defendant Fitzgerald claims that Ms. Gordon advised him to "garner written statements from employees regarding the Township

5

Supervisor's allegations of bullying behavior" and that "[o]n the advice of Ms. Gordon, [he] sent letters to several employees of the Clerk's Office." **[Id. at 802-803]**

In response, Plaintiff's Counsel, Deborah Gordon, vehemently denies Defendant Fitzgerald's claims. Ms. Gordon states that she "never assumed any attorney-client relationship with Fitzgerald" because they never met in person, she never invited him to her office, and, further, because she "does not represent management-side or employers, as a rule." **[Docket No. 67, Pg ID 1120]** Ms. Gordon claims that "it is not unheard of for [her] to take a call briefly, explain that she cannot assist with a matter, and move on" but that when a client is actually contemplating representation, "he or she is invited to the office . . . where Ms. Gordon (usually with her partners or associate) personally meets with the client and discusses the matter in detail." **[Id.]** Attorney Gordon notes that "unless a retainer is executed, the firm does not undertake to advise [a] would-be client" and a retainer was not signed therefore she "did not give him 'legal advice.'" **[Id. at 1121]**

As evidence that Defendant Fitzgerald could not have reasonably believed that she had entered in to an attorney-client relationship with him, Attorney Gordon states that while she and Mr. Fitzgerald spoke on May 25, 2012 (and he supposedly shared confidences expecting her to represent him), on May 31, 2012, Attorney David F. Greco prepared a statement for Fitzgerald and communicated with Clinton Township

6

officials on Fitzgerald's behalf showing that Defendant Fitzgerald had already retained other counsel "at the time of, before, or immediately after speaking with Ms. Gordon." **[Id.]** In her response, Attorney Gordon includes a lengthy timeline of the occurrences in this case that preceded the instant motion to bolster her argument that between July 27, 2012, (the date that Defendant Fitzgerald was served) and May 28, 2013, (the date Defendant gave notice of the alleged conflict) Defendant Fitzgerald gave no indication that he had at any time viewed her representation of Plaintiffs to be a conflict based on the phone conversation that they had on May 25, 2012. **[Id. at 1123-26]** Attorney Gordon argues that Defendant Fitzgerald may be "lying for purposes of generating an excuse" to remove her from the case or "mistaken about the source of advice he purportedly received" because she "did not undertake to advise" him. **[Id. at 1126]**

      The Court notes that a trial court does not possess "unfettered discretion to disqualify counsel." *DeBiasi v. Charter Cnty. of Wayne*, 284 F. Supp. 2d 760, 770 (E.D. Mich. 2003). Instead, the "extreme sanction of disqualification should only be utilized when there is a 'reasonable possibility that some specifically identifiable impropriety' actually occurred, and where the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice." *Id.* Based on the facts of this case and the information before

7

the Court, the Court is unpersuaded that Defendant has met his burden of showing that the alleged phone conversation between Defendant and Attorney Gordon rises to the level that requires disqualification of Plaintiffs' counsel at this time.

Defendant Fitzgerald cites to *Banner v. City of Flint*, 136 F. Supp. 2d 678 (E.D. Mich. 2000) *aff'd in part, rev'd in part*, 99 F. App'x 29 (6th Cir. 2004), for the proposition that "[a] single preliminary consultation with a potential client during which confidential information is provided to an attorney is enough to bar that attorney from subsequently deposing that potential client concerning the issues for which the attorney is consulted, even if the attorney was never formally retained." **[Docket No. 61, Pg ID 807]** In *Banner*, the City of Flint and an intervening employee moved for sanctions against the attorney for the Plaintiff and his law firm alleging that they committed ethical violations because the attorney attempted to question the intervening employee during a deposition using information and disclosures the attorney had gathered during a prior conversation with the employee. The Sixth Circuit Court of Appeals upheld sanctions against the attorney for his deposition questioning. That case, however, is distinguishable from the present case. Here, Defendant has not shown that Plaintiffs' counsel has in any way used or attempted to use any alleged confidences to Defendant Fitzgerald's detriment, either in the filing of papers or during his deposition as his deposition has not yet been taken.

The Michigan Rule of Professional Conduct 1.6 states that a lawyer may not "reveal a confidence or secret of a client" or "use a confidence or secret of a client to the disadvantage of the client." Additionally, Courts recognize that "prospective clients who meet with an attorney but do not retain the attorney are entitled to at least some of the protections afforded former clients." *Factory Mut. Ins. Co. v. APComPower, Inc.*, 662 F. Supp. 2d 896, 899 (W.D. Mich. 2009). However, the "primary concern is whether and to what extent the attorney acquired confidential information." *Id.* at 900. The court has reviewed the evidence presently before it and concludes that though Defendant Fitzgerald and Plaintiffs' counsel had a phone conversation, at this time, Defendant has failed to show that the statements he shared were matters other than those of public record or concerned issues that would not have become moot upon filing the lawsuit and the required initial disclosures. The Court also takes into consideration (though it does not wholly rely on this fact to make its decision) that almost a year elapsed between the time at which Defendant Fitzgerald received notice of this lawsuit and the identity of Plaintiffs's counsel and his filing of the instant motion. The Court appreciates Defendant Fitzgerald's argument that he has not waived his right to prevent Plaintiffs' counsel from representing them based on the conversation that he had with her in which he alleges to have shared certain confidences. However, Defendant has not provided the Court with any reason as to

9

why he waited almost a year to raise this issue.

Disqualification is a "'drastic' remedy and should not be employed lightly." *Factory Mut. Ins. Co.*, 662 F. Supp. 2d at 898 (citing *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992)). At this time, the Court is not persuaded that Defendant Fitzgerald reasonably believed he had an attorney-client relationship with Plaintiffs' counsel or that he shared confidences which may prejudice him in this matter. For these reasons, Defendant Fitzgerald's Motion to Disqualify Plaintiffs' Counsel is denied. However, if at any time during the pendency of this case Defendant Fitzgerald believes that Plaintiffs' counsel is in fact using actual confidences to his detriment, he may renew this motion and the Court may re-evaluate his claim.

**IV. CONCLUSION**

Accordingly,

**IT IS ORDERED** that Defendant, George Fitzgerald's, Motion to Disqualify Plaintiffs' Counsel **[Docket No. 61, filed June 12, 2013]** is **DENIED,** without prejudice.

**IT IS SO ORDERED.**

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: April 11, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 11, 2014, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager