## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SUSAN BROOKS and CLAUDIA HUTTO,

       Plaintiffs,                        Case Number 12-CV-12880
                                               Honorable Denise Page Hood

v.

CHARTER TOWNSHIP OF CLINTON
and GEORGE FITZGERALD,

       Defendants.
_____/

## ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT
## and SETTING STATUS CONFERENCE DATE

Now before the Court is Defendant Charter Township of Clinton's Motion for Summary Judgment **[Docket No. 125, filed June 2, 2014]**.  Plaintiffs filed a Response to this Motion, **[Docket No. 142, filed July 24, 2014]** to which Defendant Clinton Township filed a Reply **[Docket No. 149, filed August 21, 2014]**.

Also before the Court is Defendant George Fitzgerald's Motion for Summary Judgment **[Docket No. 126, filed June 2, 2014]**.  Plaintiffs filed a Response to this Motion, **[Docket No. 139, filed July 21, 2014]** to which Defendant Fitzgerald filed a Reply **[Docket No. 145, filed August 18, 2014]**.

For the reasons stated below, Defendant Clinton Township's Motion for Summary Judgment is **GRANTED**, and Defendant Fitzgerald's Motion is **GRANTED**, in part, and **DENIED**, in part.

## I.    BACKGROUND

Plaintiffs Susan Brooks and Claudia Hutto brought this action against their employer, Clinton Township, and their immediate supervisor, George Fitzgerald. Plaintiffs allege that Defendant Fitzgerald subjected them to harassment, abusive language, physical intimidation and threats, and retaliation after they refused to help him perpetrate a sexual harassment scheme.  Plaintiffs allege they instead reported the harassment to Clinton Township officials.  In addition to these claims, Plaintiff Brooks claims that Defendant Fitzgerald directed her to falsify press reports and keep him apprised of the activities of his political rivals, something that she expressed she did not want to do.  Plaintiff Brooks claims that when she refused to engage in these dishonest political acts, Defendant Fitzgerald retaliated against her.  Plaintiffs allege that Defendant Fitzgerald's hostility and threatening behavior towards them escalated after they filed police reports indicating intimidation and threats made by Fitzgerald, requested the aid of law enforcement officials, complained about his behavior to Township officials, and participated as complainants and witnesses in a township investigation against him.  Plaintiffs

contend that Defendant Township has since isolated them and removed them from doing any work related to their previous positions.

Plaintiff Brooks began employment with the Township in August 1999. Plaintiff Hutto began her employment with the Township in 2004, and retired in March of 2014. Defendant Fitzgerald was employed by the Township beginning in 2000, when he was elected as a Trustee. Defendant Fitzgerald was the Township Clerk from 2008 to 2012. Plaintiffs reported to Fitzgerald during that time.

In 2012, Defendant Fitzgerald allegedly developed an interest in Deputy Clerk Kim Irvine, and sexually harassed and stalked her (Def. Clinton Twp.'s Mot. for Summ J., Ex. E, "Irvine Deposition" at p. 499). Fitzgerald attempted to get the help of Plaintiff Brooks in locating Irvine and figuring out her schedule, but Plaintiff Brooks resisted, causing Fitzgerald to harass her. Fitzgerald demanded that the office employees praise him in letters to the editor in order to bolster support for his 2012 political campaign.

On May 21, 2012, Plaintiff Brooks filed a harassment complaint with Human Resources ("H.R.") against Defendant Fitzgerald. There was an investigation into the allegations as they pertained to Irvine, Plaintiffs Brooks and Hutto (Pls.' Resp. to Def. Fitzgerald's Mot., Ex. E, "H.R. Findings"). The information obtained from interviews with the employees reveal attempts by Defendant Fitzgerald to obtain Irvine's room number from Brooks and others

3

while at a conference,  Defendant Fitzgerald's gift of condoms and rope given to

Irvine, demands by Defendant Fitzgerald that Plaintiff Brooks take a folder of

information to the local newspaper and cursing at her when she refused, threats by

Defendant Fitzgerald that the employees would all be losing their jobs, and an

incident where Defendant Fitzgerald leaned into Plaintiff's Hutto's car to threaten

her with termination (*Id.*).

The findings of the investigation were presented to the Township Board of

Trustees on June 4, 2012, and several parties, including Plaintiff Brooks spoke

about Defendant Fitzgerald's conduct.  The Board voted to request Defendant

Fitzgerald's resignation, to forward the investigative findings to the Governor's

Office, and to physically separate him from the employees of the Clerk's and

Elections Offices (Pls.' Resp. to Def. Fitzgerald's Mot., Ex. B, "Board Meeting

Minutes" at pp. 41-43).  Despite this, Defendant Fitzgerald continued to threaten

Plaintiffs, brought his gun into the building, and walked around the office where all

the employees were.

Due to the alleged incidents and harassment, Plaintiff Brooks became ill and

temporarily left work, returned to work for one day on October 15, 2012, and

finally returned permanently on November 20, 2012.  Plaintiff Hutto went on

disability leave from August to October, 2012. Upon their return, Defendant

4

Fitzgerald allegedly advised other employees on how to deal with the Plaintiffs. Plaintiffs claim they were treated badly.

Plaintiffs brought the following claims in their Amended Complaint filed March 6, 2013: retaliatory constructive discharge in violation of Plaintiffs' freedom of speech under the Michigan Constitution and First Amendment to the United States Constitution **(Count I);** wrongful discharge of Plaintiff Brooks in violation of public policy **(Count II);** violation of Michigan's Whistleblowers' Protection Act (hereinafter "WPA") **(Count III)**;  retaliation in violation Elliott-Larsen Civil Rights Act, MCL § 37.2101, *et seq*. (hereinafter "ELCRA") **(Count IV)** and Title VII of the Civil Rights Act of 1964, as amended, 42 USC §2000(e) *et seq*. (hereinafter "Title VII") **(Count VIII)**; defamation by Defendant Fitzgerald only **(Count V)**;  intentional infliction of emotional distress by Defendant Fitzgerald only **(Count VI)**; and assault by Defendant Fitzgerald only **(Count VII)** **[Docket No. 42, filed March 6, 2013]**.

## II.      STANDARD OF REVIEW

Summary judgment is appropriate in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of

demonstrating that summary judgment is appropriate. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). The Court must consider the admissible evidence in the light most favorable to the nonmoving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. Any dispute as to a material fact must be established by affidavits or other documentary evidence. Fed. R. Civ. P. 56(c). "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

6

## III.   ANALYSIS

### A.  Violation of Right to Freedom of Speech (Count I)

To establish a First Amendment retaliation claim, a plaintiff must prove three elements:  (1) that the plaintiff was engaged in a constitutionally protected activity;  (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity;  and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.  *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000).  If the plaintiff can establish the three elements of a First Amendment retaliation claim, the burden of persuasion then shifts to the defendants, who must show, by a preponderance of the evidence, that they would have taken the same action even in the absence of the protected conduct. *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001)

To demonstrate that a plaintiff was engaging in constitutionally protected speech, the speech must touch on matters of public concern, and that the plaintiff's interest in commenting upon matters of public concern outweighs the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.  *Id.*  "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S.

7

138, 147-48 (1983). Speech involves a matter of public concern when it involves

"any matter of political, social, or other concern to the community." *Leary,* 349

F.3d at 899. This type of speech must be differentiated from a public employee's

speech that involves matters of personal interest which are not protected. *Id.* A

federal court is not the appropriate forum to review the wisdom of a personnel

decision taken by a public agency in reaction to the employer's behavior. *Connick,*

461 U.S. at 147. While "the First Amendment does not require a public office to

be run as a roundtable for employee complaints over internal office affairs," it does

protect speech regarding any "matter of legitimate public concern," *Id.* at 145, 149.

In cases involving employee speech, the court must engage in a two-part

analysis. First, the court must determine whether the speech is related to a matter

of public concern. If the commentary related only to matters of personal concern,

the Court's inquiry would be, in most circumstances, at an end, and the plaintiff's

claims should be dismissed. *Connick*, 461 U.S. at 147 ("We hold only that when a

public employee speaks not as a citizen upon matters of public concern, but instead

as an employee upon matters only of personal interest, absent the most unusual

circumstances, a federal court is not the appropriate forum in which to review the

wisdom of a personnel decision taken by a public agency allegedly in reaction to

the employee's behavior."). If, however, the court determines the speech involved

is a matter of public concern, the court then must perform a balancing test to

determine whether the government's interest in the efficient and effective provision of government services outweighed the employee's interest in speaking upon that particular matter. *Id.* at 150-54; *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). Speech that tangentially touches upon matters of political, social or other concern to the community will not rise to the level of protected speech if it is made as an employee addressing matters of only personal concern, rather than as a citizen addressing the community agenda. *Connick,* 461 U.S. at 147. Certain speech may be "mixed speech," which involves both personal and public matters. *Bonnell v. Lorenzo*, 241 F.3d 800, 812 (6th Cir.2001) (recognizing that the First Amendment protects speech involving "mixed questions of private and public concern, where the employee is speaking both as a citizen as well as an employee"); *Perry v. McGinnis*, 209 F.3d 597, 606 (6th Cir.2000) ( Because the speech involved how the state agency demanded that hearing officers find 90% of inmates guilty, this speech served to ensure that the state agency was operating in accordance with the law and such speech concerns public matters.).

In order for a municipality to be liable under Section 1983 there must be some evidence that "execution of [the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). "[A] municipality cannot be held liable solely

9

because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 691.  Generally, the doctrine of *respondeat superior* has no application in a § 1983 claim absent an allegation that the defendants were following the government's policies or customs. *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982).  Rather, "the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution." *Monell,* 436 U.S. at 690.

The Supreme Court has indicated that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480 (1986).  However, "an 'official policy' is one adopted by someone with 'final authority to establish municipal policy *with respect to the action ordered.*' " *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.,* 926 F.2d 505, 515 (6th Cir.1991) (quoting *Pembaur,* 475 U.S. at 481) (emphasis added).  In other words, "[l]iability for unauthorized acts is personal; to hold the municipality liable, *Monell* tells us, the agent's action must implement rather than frustrate the government's policy." *Id.* A municipal employee is not a "final policymaker" unless his decisions "are final and unreviewable and are not constrained by the official policies of superior officials." *Feliciano v. City of Cleveland,* 988 F.2d 649, 655 (6th Cir.1993).

10

In Plaintiffs' claim for retaliatory constructive discharge in violation of their right to freedom of speech under the Michigan Constitution and First Amendment to the United States Constitution (Count I), Plaintiffs argue that "[t]he acts of Defendant Fitzgerald represent official policy of Defendant Township and are attributable to Defendant Township" (Pls.' Am. Compl., ¶108).

In its Motion for Summary Judgment, Defendant Clinton Township (the "Township") claims it is entitled to summary judgment on all claims where there is no evidence that the Township's policy, custom, or practice was the moving force behind the alleged violation of Plaintiffs' constitutional rights. *See Monell,* 436 U.S. at 691. Defendants assert that since Defendant Fitzgerald violated the Township Board's anti-harassment policies and was not a final policymaker, the Township cannot be held liable for his alleged constitutional violation.

On July 21, 2014, Plaintiffs filed a response to the motion for summary judgment by Defendant Fitzgerald **[Docket No. 139, filed July 21, 2014]**. Plaintiff Brooks claims that she was engaged in constitutionally protected speech by refusing to pass falsified information about Defendant Fitzgerald's political opponent to the media, by publicly speaking of Defendant Fitzgerald's abuse of power, and by complaining to H.R. about an issue outside of her employment duties. Plaintiffs also contend that Plaintiff Hutto's interview as a witness regarding Brooks' complaint is protected speech since the speech was both

11

political and focused on matters of public concern.   Defendant Fitzgerald allegedly harassed the Plaintiffs in retaliation for their protected speech.

Viewing the facts in a light most favorable to the nonmoving party, Plaintiffs' speech was both political and focused on matters of public concern since it revealed improper conduct by an elected official.  The Plaintiffs' interest in speaking outweighs the government's interest in the efficient and effective provision of government services, because the improper conduct disrupted the employees' work and is of social and political importance to the community since Defendant Fitzgerald is an elected official with responsibilities to the Township and its residents.  Whether Defendant Fitzgerald harassed the Plaintiffs in retaliation for their speech and to a level that would chill a person from continuing to engage in the activity, is a genuine issue of material fact.  Summary judgment will not be granted on the claim for retaliatory constructive discharge in violation of Plaintiffs' freedom of speech under the Michigan Constitution and First Amendment to the United States Constitution (Count I).

The Court, however, dismisses the claim for retaliatory constructive discharge in Count I against the Township.  Although Defendant Fitzgerald was the final authority on employment decisions, Defendant Clinton Township had no such authority, but only the final authority on policy making.  *See Binelli v. Charter Twp. of Flint*, 488 F. App'x 95, 99 (6th Cir. 2012) ("Even the authority to

12

hire and fire general employees does not necessarily make a defendant the final policy maker.") (citations omitted).  Plaintiffs have not pointed to any policy, custom, or practice by Defendant Township to hold it liable for Defendant Fitzgerald's alleged constitutional violations.  *See Monell* at 694. To the contrary, the Township Board had a "Policy Against Harassment," which included complaint procedures and a process for investigating the matter after receiving complaints (Def. Clinton Township's Mot. for Summ. J., Exhibit G, "Policy Against Harassment").

### B.  Discharge in Violation of Public Policy (Count II)

In Michigan, "either party to an employment contract for an indefinite term may terminate it at any time for any, or no, reason."  *Suchodolski v. Michigan Consolidated Gas Co.,* 412 Mich. 692, 694-695, 316 N.W.2d 710 (1982) (citation omitted).  "However, an exception has been recognized to that rule, based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable." *Id.* at 695; *See, e.g. Trombetta v. Detroit, Toledo & Ironton Railroad Co.,* 81 Mich. App. 489, 265 N.W.2d 385 (1978) (court implies prohibition on retaliatory discharge where employee is discharged for refusing to violate the law). "[W]here a statute confers upon a victim of retaliation the right to sue, that person may not also assert a claim of discharge in violation of public policy under *Suchodolski*."  *Vagts v. Perry Drug Stores, Inc.*, 204 Mich. App. 481,

13

485, 516 N.W.2d 102, 104 (1994) (citations omitted).  In this case, the availability of a statutory right to sue under the WPA precludes a claim for discharge in violation of public policy.  *See id.* at 486.  For this reason, Count II is dismissed.

### C. Violation of Michigan's Whistleblower Protection Act (Count III)

#### 1.  Standard

In order to prevail on a claim under Michigan's WPA, a plaintiff must demonstrate that "(1) he was engaged in protected activity as defined by the act; (2) the defendant discharged him, and (3) a causal connection exists between the protected activity and the discharge." *Chandler v. Dowell, Schlumberger, Inc.*, 456 Mich. 395, 399, 572 N.W.2d 210, 212 (1998); *see also* MCL § 15.362.  An individual engages in a "protected activity" when she: (1) reports a violation or suspected violation of a law or regulation to a public body, (2) is about to report such a violation to a public body, or (3) is asked by a public body to participate in an investigation.  *Trepanier v. Nat'l Amusements, Inc.*, 250 Mich. App. 578, 583, 649 N.W.2d 754, 757 (2002).  To have engaged in a protected activity under the WPA, the plaintiff reasonably must believe a violation of law, regulation, or rule has occurred.  *See Melchi v. Burns Int'l Sec. Serv. Inc.*, 597 F.Supp. 575 (E.D. Mich. 1984).  Under the third element of the whistleblower claim, the motivation of an employee reporting a suspected violation "must be a desire to inform the public on matters of public concern."  *Shallal v. Catholic Soc. Servs. of Wayne*

14

*County*, 455 Mich. 604, 621, 566 N.W.2d 571, 579 (1997).  Otherwise, the plaintiff

cannot "establish a causal connection between her actions and her firing."  *Id.*

Many courts have held that a plaintiff is precluded from recovering under a

whistleblower statute when the employee acts in bad faith.  *See, e.g., Melchi v.*

*Burns Int'l Security Services, Inc.*, 597 F.Supp. 575 (E.D. Mich. 1984), *Wolcott v.*

*Champion Int'l Corp.*, 691 F.Supp. 1052 (W.D. Mich. 1987).  The primary

motivation of an employee pursuing a whistleblower claim "must be a desire to

inform the public on matters of public concern, and not personal vindictiveness."

*Id.* at 1065.

### 2.  Defendant Clinton Township

Defendant Clinton Township argues the WPA claim fails, because

"Plaintiffs cannot point to any adverse action taken by the Township that is

attributable to their conduct in making complaints about Fitzgerald's behavior"

(Def. Clinton Township's Mot. for Summ. J. at p. 21).  Plaintiffs argue that the

Township failed to prevent actions taken by Defendant Fitzgerald that led to their

"constructive discharge."  As discussed above, Defendant Clinton Township did

not make any employment decisions and took action in response to Defendant

Fitzgerald's actions, including conducting an investigation and publicly requesting

Defendant Fitzgerald's resignation.  Count III is dismissed against Defendant

Clinton Township.

15

### 3.   Defendant Fitzgerald

Defendant Fitzgerald argues that Plaintiff Hutto claims retaliation between May 22, 2012 and June 1, 2012, and claims constructive discharge beginning August 16, 2012.  Hutto did not file her complaint until March 6, 2013. Therefore, Plaintiff Hutto's claims under the WPA are barred by the 90-day statute of limitations. Defendant Fitzgerald also argues that Plaintiffs cannot establish adverse employment action or a causal connection between protected activity and an adverse employment action.

"[T]he precedent of this circuit clearly holds that 'an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations.'"  *In re Kent Holland Die Casting & Plating, Inc.*, 928 F.2d 1448, 1449 (6th Cir.1991) (quoting *Marlowe v. Fisher Body*, 489 F.2d 1057, 1064 (6th Cir.1973)); *see also United States ex rel. Statham Instruments, Inc. v. Western Cas. & Surety Co.*, 359 F.2d 521, 523 (6th Cir.1966) (stating that when "[t]he effect of Plaintiff's amendment is to add another party[,]" it "establishes a new and independent cause of action which cannot be maintained when the statute has run, for the amendment is one of substance rather than one of form and brings into being one not presently in court."); *Smart v. Ellis Trucking Co., Inc.*, 580 F.2d 215, 218 (6th Cir.1978).  The "type of 'changes' permitted are

16

limited to corrections of misnomers or misdescription," not adding new plaintiffs. *Asher v. Unarco Material Handling, Inc*., 596 F.3d 313, 319 (6th Cir. 2010).

Claims under the WPA must be initiated "within 90 days after the occurrence of the alleged violation of the Act." MCL § 15.236 (1). The occurrences that gave rise to the claim occurred through October, 2012. Plaintiff Brooks filed her original Complaint on June 29, 2012, when the occurrences were still ongoing, and therefore, within the statute of limitations **[Docket No. 1]**. Plaintiff Hutto was not a party to the Complaint at that time. Plaintiff Brooks filed the Motion for Leave to Amend Complaint on January 2, 2013, with the First Amended Complaint attached as an exhibit **[Docket No. 22]**. The First Amended Complaint attached to the Motion listed Claudia Hutto as a co-Plaintiff. Plaintiff Brooks then filed an Amended Motion for Leave to Amend Complaint on February 8, 2013 **[Docket No. 30]**. After this Court referred both Motions, Magistrate Judge Mona K. Majzoub granted the Amended Motion to Amend Complaint and found the Motion for Leave to Amend Complaint moot on March 5, 2013 **[Docket No. 41]**. Plaintiffs filed an Amended Complaint on March 6, 2013 **[Docket No. 42]**.

The incidents that gave rise to the WPA claim occurred at least until October 15, 2012, when Plaintiff Hutto returned to work and was allegedly prevented from performing her duties. If the Court assumes that was the date which gave rise to

17

the WPA claim, Plaintiff Hutto had until January 14, 2013, to file her claim.[1] The First Amended Complaint attached to the Motion listed Claudia Hutto as a co-Plaintiff, and as a new Plaintiff, Plaintiff Hutto's claims do not relate back to the filing date of the original complaint. *See In re Kent*, 928 F.2d at 1449.

Since the Amended Complaint was filed as an exhibit to the Motion for Leave to Amend Complaint on January 2, 2013, the Court is satisfied that Defendants were on notice with regards to Plaintiff Hutto being added as a co-Plaintiff. Defendants were also on notice as to the claims that Plaintiff Hutto was bringing, including the WPA claim, within the 90-day statutory period.

Viewing the facts in a light most favorable to Plaintiffs, Plaintiffs have provided sufficient evidence to establish that Defendant Fitzgerald took adverse employment actions against them and a causal connection exists between the protected activity and the adverse employment action. Constructive discharge is "the culmination of alleged wrongful actions that would cause a reasonable person to quit employment." *Joliet v. Pitoniak*, 475 Mich. 30, 41, 715 N.W.2d 60, 68 (2006). Defendant Fitzgerald allegedly told Plaintiffs they would be losing their jobs and allegedly harassed them in a manner meant to encourage their resignation.

---

[1] January 13, 2013 is 90 days after October 15, 2012. Since it is a Sunday, however, Fed. R. Civ. P. 6(a)(2)(C) requires running the period until Monday, January 14, 2013.

Whether these actions would cause a reasonable person to quit is genuine issue of material fact.  *See Joliet*, 475 Mich. at 47 (2006)

Plaintiffs' allegations also support a causal connection between the protected activity and the adverse employment action.  Plaintiff Brooks allegedly heard Defendant Fitzgerald say he would "take care of that bitch" for filing a complaint with the Township's H.R.  (Mot. for Summ. J. by Clinton Township, Ex. A, "Brooks Deposition" at pp. 306-307).  At the same time, Defendant Fitzgerald also allegedly harassed Plaintiff Hutto, who complained to H.R. as well.  Viewing the facts in a light most favorable to Plaintiffs, the Court finds there remains a genuine issue of material fact as to a causal connection.

### D.  Retaliation under ELCRA (Count IV) and Title VII (Count VIII)

Defendants also seek to dismiss the retaliation claims in Counts IV and VIII. Plaintiffs respond that there are genuine issues of material fact as to their retaliation claims.

The elements of a *prima facie* case of under Title VII and the ELCRA retaliation claims are the same: 1) that plaintiff engaged in an activity protected by Title VII or ELCRA; 2) that the defendant knew of this exercise of plaintiff's protected rights; 3) that defendant consequently took an employment action adverse to plaintiff; and 4) that there is a causal connection between the protected activity and the adverse employment action.  *Balmer v. HCA, Inc.,* 423 F.3d 606,

19

613-14 (6th Cir. 2005); *Abbott v. Crown Motor Co., Inc.,* 348 F.3d 537, 542 (6th Cir. 2003).  Once a *prima facie* retaliation claim is established, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action. *Spengler v. Worthington Cylinders,* 615 F.3d 481, 492 (6th Cir. 2010).  The burden then shifts back to the plaintiff to show the stated reasons were mere pretext to mask retaliation.  *Id.*

Protected activities include:  opposition to any unlawful employment practice; or making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding or hearing in connection with an unlawful employment practice.  42 U.S.C. § 2000e-3(a).  Causation can be proven indirectly through circumstantial evidence such as suspicious timing.  *Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 523, 525 (6th Cir. 2008).  Temporal proximity between an assertion of Title VII rights and a materially adverse action, is sufficient to establish the causal connection element of a retaliation claim where an adverse employment action occurs very close in time after an employer learns of a protected activity.  *Id*. at 525.  Where the nexus is not "very close," the Sixth Circuit has declined to find a causal connection based on timing alone.  *Id.* at 523. In such a case, the plaintiff must proffer additional evidence of retaliatory conduct to establish a causal connection between the protected activity and the adverse employment action.  *Little v. BP Exploration & Oil Co.,* 265 F.3d 357, 364 (6th

Cir. 2001).  A combination of evidence may include other employees' fear of retaliation, repeated comments regarding discipline, an atmosphere where a plaintiff's activities were scrutinized more carefully than those of comparably situated employees, both black and white, more unwarranted criticism of plaintiff's work, and more frequent disciplinary writeups of plaintiff for trivial matters.  *Id.*

Plaintiffs claim that they were engaged in activity protected by Title VII and the ELCRA since they opposed Defendant Fitzgerald's sexual harassment of Kim Irvine by refusing to participate, and by openly criticizing his harassment. Fitzgerald had knowledge of the protected activity, because the Township's legal counsel notified him.  The amount of harassment Plaintiffs suffered from Fitzgerald was extensive, including bullying, carrying a gun in the office, yelling, and using profanity.  As discussed above, these incidents may amount to constructive discharge.

Viewing the facts in a light most favorable to Plaintiffs, a causal connection between the protected activity and adverse employment action may exist, as indicated by Defendant Fitzgerald's statement to Brooks, "you're going to pay," and his threat to Hutto that she would be fired because of what Brooks did. Defendant Fitzgerald also prevented Plaintiffs from performing their duties when they returned to work.

As discussed above, however, Plaintiffs have not provided any evidence of adverse employment action taken by the Township. For these reasons, the Court grants Defendant Clinton Township's request for summary judgment on Counts IV and VIII, but denies it as to Defendant Fitzgerald since there remains genuine issues of material fact as to his actions against Plaintiffs.

### E. Tort Claims Against Defendant Fitzgerald

#### 1. Governmental Immunity

Defendant Fitzgerald argues that the tort claims against him are barred by absolute immunity for a governmental official. "A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority." MCL § 691.1407(5). The Michigan Supreme Court provided the following test for determining whether there was immunity from liability for intentional torts: (1) the act was taken during the course of employment and the employee acted or reasonably believed he acted within the scope of employment; (2) the act was taken in good faith; (3) the act was discretionary and not ministerial in nature. *Odom v. Wayne Cnty.*, 482 Mich. 459, 473, 760 N.W.2d 217, 224 (2008).

Plaintiffs claim that Defendant Fitzgerald harassed and intimidated them, and continued to do so even after he was banned from being in the building. Defendant Fitzgerald has not indicated how these actions are within the scope of his duties. Since there is a genuine issue of fact whether Defendant Fitzgerald's actions were within the scope of power delegated to him to perform his duties, the Court will not grant summary judgment based on governmental immunity.

### 2. Defamation (Count V)

Under Michigan law, "the elements of a defamation claim are: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication." *Mitan v. Campbell*, 706 N.W.2d 421 (Mich. 2005). "[T]ruth is an absolute defense to a defamation claim." *Porter v. Royal Oak*, 214 Mich. App. 478, 486 (1995). In order for a defamation claim to succeed, there must be material falsity. *Koniak v. Heritage Newspapers, Inc.*, 198 Mich. App. 577, 579-580 (1993). "If a statement cannot be reasonably interpreted as stating actual facts about the plaintiff, it is protected by the First Amendment." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990). Whether a statement is capable of having a

defamatory meaning is a question of law, to be determined by the court. *See Kervorkian v. AMA*, 237 Mich. App. 1, 9 (1999).

Defendant Fitzgerald accused Plaintiff Brooks of spreading rumors, stating "[Brooks] did it, she has a big mouth and tells people everything" (Brooks Deposition, pp. 435-436). In addition to other harms, such as damage to reputation, Plaintiff Brooks claims she saw a psychiatrist as a result of Defendant Fitzgerald's actions (*Id.* at p.412). This claim survives since there exists a genuine issue of material fact as to whether Fitzgerald made defamatory statements about Plaintiff Brooks. Defendant Fitzgerald has not provided proof that the statements are true as a defense other than to claim Plaintiff Brooks was aware of a romantic involvement between Irvine and another Township employee (Def. Fitzgerald's Mot. for Summ. J., p. 36).

Defendant Fitzgerald publicly made statements to the Township Board and the audience at a meeting that Plaintiff Hutto was the cause of another employee retiring early (Def. Fitzgerald's Mot. for Summ. J., Ex. B, "Hutto Dep." at pp. 189-196). . Plaintiff Hutto claims, however, the former retired employee stated that Plaintiff was not the reason she retired early, but rather it was due to Defendant Fitzgerald's conduct *(Id.)*. Defendant Fitzgerald has not provided evidence to prove the truthfulness of his statement. Plaintiff Hutto alleges her reputation was damaged and she suffered various harms as a result of Fitzgerald's statements

(Am. Compl., ¶ 144).  Viewing the facts in a light most favorable to Plaintiffs, there are genuine issues of material fact as to this claim.

### 3.  Intentional Infliction of Emotional Distress (Count VI)

The Michigan Supreme Court has not explicitly recognized a tort for intentional infliction of emotional distress.  *Smith v. Calvary Christian Church*, 614 N.W.2d 590, 593 n.7 (Mich. 2000).  However, the court has recognized that a claim could be made under the standard described in the Second Restatement: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) plaintiff suffered severe emotional distress.  *Robert v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 908 (Mich. 1985).  The Court notes that the threshold for what is deemed outrageous conduct is high.  Conduct is sufficiently outrageous "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* (quoting Restatement Torts, 2d., § 46, comment g).  "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient.  *Id.*  "[T]he trial judge [initially] decide[s] whether defendant's conduct might reasonably be regarded as so extreme and outrageous as to allow recovery for intentional infliction of emotional distress." *Sawabini v. Desenberg*, 372 N.W.2d 559, 565 (Mich. Ct. App. 1985).

Defendant Fitzgerald argues that the IIED claim fails because Plaintiffs have not shown that Defendant's conduct rises to the level of being outrageous. In their Complaint, Plaintiffs do not point to specific conduct that serves as a basis of this claim, but rather point to Defendant Fitzgerald's actions that served the basis of the prior claims. Those actions include Defendant Fitzgerald's harassment, threats, and intimidating acts against Plaintiffs. Plaintiffs also allege that they have suffered emotional distress as a result of Defendant Fitzgerald's actions against them. The Court finds there remain genuine issues of material fact as to whether Defendant Fitzgerald's actions rise to the level of being outrageous.

### 4. Assault (Count VII)

"Under Michigan law, an assault is an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." *Bletz v. Gribble*, 641 F.3d 743, 757 (6th Cir. 2011). Defendant Fitzgerald argues that the assault claim fails, because his words alone do not suffice as basis for an assault claim. Plaintiffs allege that Fitzgerald approached Plaintiff Hutto in the parking lot, threatened her, and banged his fist on the roof of the car. Putting Plaintiff in reasonable apprehension of an immediate battery by pounding on the roof of the car and threatening her may rise to the level of assault. *See id.* Plaintiffs also claim Defendant Fitzgerald carried a gun in a manner meant to intimidate them and they felt threatened on numerous occasions.

26

Viewing the facts before the Court in the light most favorable to the Plaintiffs, the Court cannot determine there exists no genuine issue of material fact regarding whether Defendant Fitzgerald's actions constituted assaults on Plaintiffs. Summary judgment is not warranted on this claim.

## IV.   CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that Defendant Charter Township of Clinton's Motion for Summary Judgment **[Docket No. 125, filed June 2, 2014]** is **GRANTED** as to all counts against it.

**IT IS FURTHER ORDERED** that Defendant Charter Township of Clinton is **DISMISSED** from this action.

**IT IS FURHTER ORDERED** that Defendant George Fitzgerald's Motion for Summary Judgment **[Docket No. 126, filed June 2, 2014]** is **GRANTED**, in part, and **DENIED**, in part.  Defendant's Motion is **GRANTED** as to Count II (Discharge in Violation of Public Policy), but **DENIED** as to all the remaining counts.

**IT IS FURTHER ORDERED** that a Status Conference is set for November 3, 2015, 4:00 p.m.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  September 30, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2015, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager